O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SUZANNE WINCHESTER            )   Case No. ED CV 12-1449-SP
                 Plaintiff,   )
                              )
        v.                    )   MEMORANDUM OPINION AND
                              )   ORDER
                              )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social Security )
Administration,               )
                              )
              Defendant.      )
_____ )

**I.**

**INTRODUCTION**

On September 7, 2012, plaintiff Suzanne Winchester filed a complaint against defendant, the Commissioner of Social Security ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the finding of the Administrative Law Judge ("ALJ") that plaintiff's mental impairment is not

1 severe was in error; and (2) whether the ALJ's failure to obtain testimony from a
2 mental health expert at step three was in error.  Plaintiff's Memorandum in
3 Support of Complaint ("Pl. Mem.") at 4-10; Memorandum in Support of
4 Defendant's Answer and in Opposition to Plaintiff's Memorandum in Support of
5 Complaint ("Def. Mem.") at 2-10.

6 Having carefully studied, inter alia, the parties's moving papers, the
7 Administrative Record ("AR"), and the decision of the ALJ, the court concludes
8 that, as detailed herein, the ALJ properly found that plaintiff's mental impairment
9 is not severe.  It was therefore unnecessary for the ALJ to consult a mental health
10 expert at step three.  Consequently, this court affirms the decision of the
11 Commissioner denying benefits.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

14 Plaintiff, who was fifty-nine years old on the date of her December 13, 2010
15 administrative hearing, completed some high school.  AR at 20, 45, 57-58, 170,
16 356.  Her past relevant work was as an office manager and a security guard.  AR at
17 26-27, 45, 53-54, 57, 173.

18 On January 30, 2009, plaintiff protectively filed an application for SSI.  AR
19 at 20, 110-113.  This application alleged that plaintiff suffered from multiple
20 strokes and heart attacks, diminished use of her right arm, and cognitive
21 difficulties, with an onset date of September 11, 2008.  AR at 20, 163.  The
22 Commissioner denied plaintiff's applications for benefits, after which she filed a
23 request for a hearing.  AR at 20, 62-66, 72-77.

24 On December 13, 2010, plaintiff, represented by counsel, appeared and
25 testified at a hearing before the ALJ.  AR at 45, 49-53.  The ALJ also heard
26 testimony from Dr. Sami Nafoosi, a medical expert, and Alan Boroskin, a
27 vocational expert.  AR at 45, 46-49, 53-55.  On January 10, 2011, the ALJ denied
28 plaintiff's claim for benefits.  AR at 17-27.

1    Applying the well-known five-step sequential evaluation process, the ALJ

2 found, at step one, that plaintiff did not engage in substantial gainful activity since

3 January 30, 2009, the protective filing date.  AR at 22.

4    At step two, the ALJ found that plaintiff suffers from the following severe

5 impairments: hypertension with end organ damage, chronic obstructive pulmonary

6 disease, and a compression fracture of the seventh thoracic vertebrae.  *Id.*  The

7 ALJ found that plaintiff's mental impairment is not severe.  AR at 23.

8    At step three, the ALJ found that plaintiff's impairments did not meet the

9 listed impairments set forth in section 12.04 of 20 C.F.R. part 404, Subpart P,

10 Appendix 1.  AR at 24.  As to plaintiff's mental impairment, the ALJ found that it

11 did not meet any of the listed impairments in Listing 12.00 of the Listing of

12 Impairments, including consideration of the "paragraph B" criteria.  *Id.*

13    The ALJ then assessed plaintiff's residual functional capacity ("RFC").[1]

14 AR at 24-26.  The ALJ found that plaintiff has the RFC to perform light work with

15 the following limitations: she needs to change positions every hour, and is limited

16 to occasional climbing, balancing, stooping, kneeling, crouching, crawling, and

17 squatting.  AR at 24.  In addition, plaintiff should avoid concentrated exposure to

18 dusts, chemical fumes, vapors, or sudden changes in extreme temperatures.  *Id.*

19    The ALJ found, at step four, that plaintiff would be capable of performing

20 her past relevant work as a security guard and office manager as actually and

21 generally performed, and that those occupations did not require plaintiff to

22 perform work precluded by her RFC.  AR at 26-27.

23

24 ───────────────

25    [1]   Residual functional capacity is what a claimant can do despite existing
exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152,
26 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
evaluation, the ALJ must proceed to an intermediate step in which the ALJ
27 assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486
28 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1    Consequently, the ALJ concluded that plaintiff did not suffer from a
2    disability as defined by the Social Security Act.  AR at 27.
3        Plaintiff filed a timely request for review of the ALJ's decision, which was
4    denied by the Appeals Council on July 10, 2012.  AR at 1, 36.  The ALJ's decision
5    stands as the final decision of the Commissioner.
6                                     III.
7                          <u>**STANDARD OF REVIEW**</u>
8        This court is empowered to review decisions by the Commissioner to deny
9    benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
10   Administration must be upheld if they are free of legal error and supported by
11   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
12   (as amended).  But if the court determines that the ALJ's findings are based on
13   legal error or are not supported by substantial evidence in the record, the court
14   may reject the findings and set aside the decision to deny benefits.  *Aukland v.*
15   *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
16   1144, 1147 (9th Cir. 2001).
17       "Substantial evidence is more than a mere scintilla, but less than a
18   preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such
19   "relevant evidence which a reasonable person might accept as adequate to support
20   a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
21   F.3d at 459.  To determine whether substantial evidence supports the ALJ's
22   finding, the reviewing court must review the administrative record as a whole,
23   "weighing both the evidence that supports and the evidence that detracts from the
24   ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be
25   affirmed simply by isolating a specific quantum of supporting evidence.'"
26   *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th
27   Cir. 1998)).  If the evidence can reasonably support either affirming or reversing
28   the ALJ's decision, the reviewing court "'may not substitute its judgment for that

                                      4

1  of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.
2  1992)).

3  **IV.**

4  **DISCUSSION**

5  A.   **The ALJ's Findings at Step Two that Plaintiff's Mental Impairment**
6        **Is Non-Severe Was Not in Error**

7        Plaintiff argues that the ALJ erred when he did not find that plaintiff's
8  mental impairment is severe at step two.  Pl. Mem. at 5-9.  Plaintiff contends that
9  there is significant evidence in the record to indicate that plaintiff's mental
10  impairment is severe, relying almost entirely upon the medical records proffered
11  by Dr. Gene N. Berg, Ph.D.  *Id.*  The Commissioner contends the ALJ properly
12  discounted Dr. Berg's opinion in favor of the findings of the State agency
13  physician Dr. S. Khan, M.D., and the examining physician Dr. Hiruy Gessesse,
14  M.D.  Def. Mem. at 2-8.  Because the ALJ articulated specific and legitimate
15  reasons to discount Dr. Berg's opinion, and because the opinions of Drs. Khan and
16  Gessesse indicating that plaintiff's mental impairment is non-severe were properly
17  credited, the court finds that the ALJ did not err at step two.

18        The inquiry at step two is whether or not a claimant is suffering from a
19  severe impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii).  The step
20  two inquiry is defined as "'a de minimis screening device to dispose of groundless
21  claims.'"  *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001, *as amended*
22  Aug. 9, 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).
23  "At step two of the five-step sequential inquiry, the Commissioner determines
24  whether the claimant has a medically severe impairment or combination of
25  impairments."  *Smolen*, 80 F.3d at 1289-90.  "Important here, at the step two
26  inquiry, is the requirement that the ALJ must consider the combined effect of all of
27  the claimant's impairments on her ability to function, without regard to whether
28  each alone was sufficiently severe."  *Id.* at 1290.  The ALJ is also "required to

consider the claimant's subjective symptoms . . . in determining severity." *Id.*

"An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."[2] *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28).[3] "[A]pplying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Id.* In addition, "'if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Id.* (quoting SSR 85-28) (brackets omitted).

///

///

---

[2]   "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Edlund*, 253 F.3d at 1159 (internal citations omitted).

[3]   "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

1    **1.    Evidence of Mental Impairment Before Treatment**

2        On September 11, 2008, plaintiff was admitted to the emergency room

3    complaining of an inability to remember simple things and an inability to perform

4    activities of daily living.  AR at 226.  She was not oriented to date, time, or place.

5    AR at 235.  She was admitted to the hospital and diagnosed with an acute mental

6    status change of unknown etiology.  AR at 226-27, 234.  Upon discharge from the

7    hospital she was stable, and was oriented to person, place, time, and situation,

8    though she did not know what the date was.  AR at 236.

9    **2.    Dr. Hiruy Gessesse, M.D.**

10       With respect to the severity of plaintiff's mental impairment, the ALJ relied

11   upon and credited the medical opinion of Dr. Hiruy Gessesse.  AR at 22.  Dr.

12   Gessesse examined plaintiff on May 31, 2009.  AR at 283.  Dr. Gessesse assigned

13   plaintiff a global assessment functioning score ("GAF") score of 65.[4]  AR at 286.

14   According to the evaluation undertaken by Dr. Gessesse, plaintiff maintained good

15   eye contact and established a rapport with him.  AR at 285.  Plaintiff's thought

16   processes were concrete but linear and were goal directed.  *Id.*  Plaintiff was able

17   to state four digits forward and backward and was able to do serial 7's correctly.

18   *Id.*  When asked how much change would be left from one dollar if three oranges

19   were bought at fifteen cents each, plaintiff correctly answered fifty-five cents.  *Id.*

20   Plaintiff could understand and explain proverbs.  AR at 286.  Dr. Gessesse

21   concluded that plaintiff could regularly perform tasks and attend work.  *Id.*

22   Plaintiff's prognosis was fair.  *Id.*

23   ///

24

25       [4]   A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed

26   mood and mild insomnia) OR some difficulty in social, occupational, or school

27   functioning . . ., but generally functioning pretty well, has some meaningful

     interpersonal relationships."  American Psychological Association, Diagnostic and

28   Statistical Manual of Mental Disorders 34 (4th Edition, Text Revision).

### 3.    The State Agency Physician, Dr. S. Khan M.D.

The ALJ also relied upon the opinion of the State agency physician S. Khan in the determination that plaintiff's mental impairment is not severe.  AR at 22. Dr. Khan reviewed plaintiff's medical records and completed a "Psychiatric Review Technique" for plaintiff on June 30, 2009.  AR at 301, 313.  Dr. Khan noted that plaintiff suffered from adjustive disorder with depressed mood, though that impairment was not severe.  AR at 301, 304, 311.  Moreover, Dr. Kahn concluded that plaintiff would experience no functional limitations on activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and would not suffer repeated episodes of decompensation of an extended duration.  AR at 309.  According to Dr. Khan, plaintiff's medical records exhibited no demonstrable impairment in memory or attentional processes. AR at 313.  Dr. Khan also noted that plaintiff was only partially credible concerning her ability to work; he concluded that plaintiff's mental impairment would not prevent her from performing "one-two step repetitive tasks with adequate pace and persistence" and would not have an issue "adapt[ing] and relat[ing] to coworkers and supervisors [or] deal[ing] with changes in the routine public work setting."  AR at 311.

### 4.    Plaintiff's Statements in Her Application for Benefits Relevant to Her Mental Impairment

In addition to Dr. Gessesse's opinion that plaintiff is able to work, the ALJ relied upon plaintiff's own statements in her application for benefits.  AR at 23.  In the application, plaintiff stated that she was able to spend time with people daily, use public transportation, did not need to be reminded to go places, and can handle her own finances though that ability has been somewhat diminished.  AR at 137-38.

///

///

1

### 5.     Dr. Gene Berg, Ph.D

2      The ALJ also considered the testimony of Dr. Gene Berg, Ph.D in his

3   assessment of plaintiff's mental impairment.  AR at 23.  Dr. Berg conducted a

4   psychological evaluation of plaintiff at her counsel's request on October 29, 2010.

5   Dr. Berg found that, although plaintiff was alert and did not appear disorganized,

6   she did have trouble responding to questions and had difficulty maintaining her

7   train of thought.  AR at 355.  Dr. Berg noted a connection between a possible

8   depressive disorder and plaintiff's previous heart attacks and stroke.  AR at 356.

9   During the evaluation, plaintiff could respond appropriately to hypothetical

10  judgment scenarios but could not perform serial 3's or 7's and complained of

11  difficulties with attention and concentration.  *Id.*  When given a memory task, she

12  was unable to recall three things after a short period of time.  *Id.*  Dr. Berg

13  diagnosed plaintiff with a non-specific cognitive disorder and a non-specific

14  depressive disorder, assigning plaintiff a GAF score of 50.[5]  AR at 357.  In

15  conclusion, Dr. Berg found that plaintiff's psychological impairment would

16  preclude work.  AR at 358.

17      In evaluating medical opinions, the regulations distinguish among three

18  types of physicians:  (1) treating physicians; (2) examining physicians; and (3)

19  non-examining physicians.  20 C.F.R. §§ 404.1528(c),(e), 416.927(c), (e); *Lester*

20  *v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).  In this case, plaintiff

21  has not been treated by a physician for her mental health impairment; Drs.

22  Gessesse and Berg each conducted examinations of plaintiff and therefore should

23  be considered examining physicians.  Dr. Khan reviewed plaintiff's medical file

24  when making his determination and never examined plaintiff personally.  *See* AR

25

_____

26      [5]    A GAF score of 41–50 indicates "serious symptoms . . . [or] any serious
    impairment in social, occupational, or school functioning," such as inability to
27  keep a job.  American Psychological Association, Diagnostic and Statistical
    Manual of Mental Disorders 34 (4th Edition, Text Revision).
28

at 313.  Therefore, Dr. Khan was a non-examining physician.  The opinions of Drs. Gessesse and Berg are thus entitled to more weight than Dr. Khan's. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that the opinion of an examining physician is entitled to greater weight than that of a non-examining physician).  "If the . . . examining physician's opinion is contradicted by another doctor, as here, the ALJ may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Combs v. Astrue*, 387 F. App'x 706, 708 (9th Cir. 2010) (citing *Lester*, 81 F.3d 830-31).

Here, Dr. Berg's conclusions were not rejected outright solely because they were sought by plaintiff in connection with her appeal for benefits.  AR at 23. Instead, the ALJ noted that Dr. Berg's conclusions were entitled to "due consideration," before ultimately providing specific and legitimate reasons to discount Dr. Berg's conclusions.  AR at 23-24.

First, the ALJ noted that there were many aspects of Dr. Berg's opinion that contradicted other medical evidence, including Dr. Gessesse and Dr. Khan's evaluations of plaintiff.  AR at 23.  The ALJ listed all of the evidence he considered in finding that plaintiff did not suffer from a severe mental impairment. *See* AR at 22-24.  Of particular importance was plaintiff's inconsistent performance during evaluative testing by plaintiff done by Drs. Gessesse and Berg.  Plaintiff completed the task of serial 7's without issue when evaluated by Dr. Gessesse and said that her concentration and memory were "okay," but was unable to count serial 3's and 7's when asked by Dr. Berg and complained of a loss in concentration.  AR at 285, 356.

Second, the ALJ noted that Dr. Berg's conclusion that plaintiff is unable to work contradicts the statements plaintiff made to Dr. Gessesse as well as the record of daily activities in her application for benefits to the Social Security Administration.  AR at 23.  For example, when interviewed by Dr. Gessesse,

plaintiff was able to correctly solve a math problem involving leftover change. AR at 285. On her application for benefits, plaintiff noted that she did all of her own banking, including paying bills, counting change, handling a savings account, and using a checkbook, though she noted some difficulty writing checks and balancing her checkbook. AR at 137-38. When evaluated by Dr. Berg, however, he noted that plaintiff would be limited in her ability to carry out simple one or two-step instructions or perform activities within schedule. AR at 363

Finally, the ALJ gave less weight to Dr. Berg's opinion because his evaluation of plaintiff was undertaken at the behest of plaintiff's counsel in connection with her claim for SSI and not for purposes of treatment. AR at 23, 355. Although an ALJ may consider the source and context of a doctor's opinion, he may not dismiss it solely because it was solicited by counsel. *Lester*, 81 F.3d at 832; *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996) (per curiam). "Evidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings [can] form a legitimate basis for evaluating the reliability of the report." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). Given the disparity of plaintiff's performance in the psychological evaluations done by Drs. Gessesse and Berg, and because the opinions of Drs. Gessesse and Khan were consistent with other evidence in the record, it was permissible for the ALJ to discount Dr. Berg's testimony on the basis that it was sought in connection with a disability claim.

Even if the ALJ erred in rejecting Dr. Berg's opinion in part because the consultative exam was conducted at the behest of plaintiff's counsel, because the ALJ cited other specific, legitimate reasons for rejecting that testimony there is no error. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir.1999) (noting that if an ALJ relies upon an impermissible reason to discount a doctor's credibility, there is no error if he also relies upon other, permissible evidence to do so); *see also Hammond v. Astrue*, 2008 WL 276360, at *24

11

1   (D. Ariz. Jan. 29, 2008).

2       The ALJ's decision to discount Dr. Berg's opinion was permissible and

3   supported by the record.  Though plaintiff's briefing devotes much time

4   addressing the findings of Dr. Berg, she completely disregards the findings of Drs.

5   Gessesse and Khan to the contrary.  *See* Pl. Mem. at 5-8 (discussing Dr. Berg's

6   opinion but not Drs. Gessesse or Khan).  Plaintiff has at best made an argument

7   that the record supports more than one rational interpretation.  Such an argument

8   is insufficient to show legal error because "[i]f the record would support more than

9   one rational interpretation, [the court] defer[s] to the ALJ's decision." *Bayliss v.*

10  *Barnhart*, 427 F.3d at 1214 n. 1 (9th Cir. 2005) (citation omitted).  Accordingly,

11  the ALJ did not err when he determined that plaintiff's mental impairment is not

12  severe.

13  **B.   It Was Unnecessary at Step Three for the ALJ to Consult a Mental**

14      **Health Expert**

15      Plaintiff argues that because the ALJ erred in determining that plaintiff's

16  mental impairment is not severe at step two as discussed above, his failure to

17  consult a mental health expert to determine if plaintiff met or equaled a listing at

18  step three was in error.  Pl. Mem. at 9-10.  The court disagrees.

19      As discussed above, the ALJ did not err at step two when he found that

20  plaintiff's mental impairment was not severe.  If an impairment is found to be non-

21  severe at step two, that impairment cannot form the basis for a claim of disability.

22  *See* 20 C.F.R. § 404.1520 ("If you do not have a severe medically determinable

23  physical or mental impairment that meets the duration requirement . . . we will find

24  that you are not disabled."); *see also Sutton v. Colvin*, 2013 WL 1290802, at *8

25  (E.D. Wash. Mar. 27, 2013) ("because the ALJ properly found plaintiff's

26  depression is not severe at step two, he could not have erred at step three regarding

27  equivalency of a non-severe impairment.").  Thus, an ALJ must only analyze an

28  impairment to determine if it meets or exceeds a listing at step three if that

1  impairment is found to be severe at step two.  It was therefore unnecessary for the

2  ALJ to consult a mental health expert at step three, because plaintiff's mental

3  health impairment was found to be non-severe at step two.  Accordingly, the ALJ

4  did not err at step three.

5  ## V.

6  ## CONCLUSION

7       IT IS THEREFORE ORDERED that Judgment shall be entered

8  AFFIRMING the decision of the Commissioner denying benefits, and dismissing

9  the complaint with prejudice.

10

11  DATED:  May 22, 2013

12

13

14                                     SHERI PYM
                                       United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28